## Murdoch Campbell v. Patrick H. Mullen.

1. PERSONAL INJURIES—*Requisites of Recovery.*—In order to recover damages sustained by personal injuries, the result of negligence, the plaintiff must show that he was in the exercise of ordinary care at the time of the accident.

2. MASTER AND SERVANT—*Notice of Defects.*—A master is not required to give notice of what is apparent to a servant who understands the mode of construction, etc.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded. Opinion filed November 18, 1895.

WALKER & EDDY, attorneys for appellant.

J. WARREN PEASE, attorney for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

On January 8, 1892, appellee was in the employ of appellant, as a carpenter on the Casino building, in Jackson Park. The roof of the building was being put on. The rafters were already in place and the boards of the roof were being laid. On the outside edge of the roof terra cotta ornaments were being placed. These terra cotta ornaments rested upon the flange of an "I" beam, and the top of the ornaments or terra cotta work, when finished, was even with the line of the roof.

This terra cotta work was thirteen or fourteen feet from the ground. The terra cotta was composed of three pieces.

First, the base, which rested upon, and was fastened to, the "I" beam.

Second, the middle piece, which rested upon the base, and when finished, was surrounded with mortar.

Third, the top piece, which was placed upon the second piece, and bolted to the "I" beam with an iron bolt, or fastened with wires.

About four o'clock of the afternoon of January 8th, appellee was ordered by Frazer, foreman of appellant, to take his tools and go around to the north side of the building. Appellee testified as follows:

"My partner went up on top and I handed him up the sheeting boards. The rafters were there ready for us. Then we got up and laid the sheeting boards, and Frazer came along and said, 'You have enough up there for to-night; go up and nail them down.'

This was on the northwest corner. It was on the south end we put up the sheeting boards. When I fell, I was working on the southwest corner."

The terra cotta work was not done by the contractor for whom appellee worked.

The workmen for the contractor for the carpenter work and those for the terra cotta work had been working side by side for some time previous to the accident. Appellee was familiar with the way the terra cotta work was put on and fastened.

He says: "I think all that terra cotta was put up in the same way; so far as I saw, it was.

There was a lower member or foundation piece put on the 'I' beam, and when that lower member was bolted to the 'I' beam, they stood the side piece on its edge, and that stood there until they put the top piece on.

That top piece was quite a heavy, broad piece, and when they got that top piece in place, they put their arm in and put in the bolts. They did not fasten it until they got the top piece in place, except the bottom piece was fastened. They did not fasten the side or top piece until the top piece was in place.

The top pieces were eighteen or twenty inches long. In doing the work, they would go along with the bottom piece for a long distance. Two gangs worked at it; one put on the lower and one finished the top. They could put on as much as they wanted to of the lower course. That was all open work. Then they could stand on the lower pieces, as many of the side pieces as they wanted to, and when they put on the top piece, then they put the bolts in and fastened it all, and it was when the top piece was in place that everything became solid, and they used plaster of paris to finish up the seams, so that it would look like a stone building. Of course the plaster of paris had no sustaining power. It was not until the top piece was on and the anchor iron or bolt was in place, that the whole thing was solid."

Appellee was directed to go upon the roof to do certain work; after he had been upon the roof for a time he started to go where a fellow-servant working with him was; he walked some ten or twelve feet on boards and rafters laid upon the roof, until he reached the terra cotta; here he stepped upon the middle member of the terra cotta, which he described as the "side piece," the top piece not then

being on; this side piece was unfastened, and when appellee stepped upon it, he fell to the ground.

Appellee says that he did not know the condition of the terra cotta at the southwest corner. Its condition was obvious to one familiar as was he with the manner in which it was put in place. He could not have failed, had he looked, to observe that the top piece was not up and that consequently the "side piece" was unfastened.

Doubtless, to step upon this "side piece" did not seem dangerous, and might have been done many times without an accident; it was, however, a thing the nature of which was apparent, and appellee, in stepping thereon, took the risk of the loose member tipping over and throwing him off.

Appellee says that he had previously walked upon the terra cotta on the east side; the fact that he had at another place done without harm what he did on this occasion with a resulting injury, by no means establishes that he was at either time exercising due care.

There is evidence tending to show that appellant knew of the condition of this terra cotta at the time when appellee was injured. Such knowledge might have made it the duty of appellant to warn appellee, if the condition of the work had not been such that only by a want of ordinary care and observation could appellee have failed to know of a state of affairs that was apparent. Appellant did not place the terra cotta upon this building, nor was he in any way responsible for its being loose and unfastened, while, so far as appears, appellee had every opportunity for knowing in what manner it was placed.

There is evidence that it had snowed the night before the accident and that some three inches of snow were resting upon the terra cotta. The snow could not have led one to think that the large top pieces of terra cotta, by which all the work was fastened, were in place, nor does it appear to have been in any way a means of deception.

Ordinarily, a man walking upon a building in course of construction will be more careful in making his way over material covered with snow, than if he can clearly see what it is upon which he is stepping.

It does not appear that it was necessary for appellee to have stepped upon this terra cotta; he could have gone by another and safer route to the place toward which he was directing his way. While we do not mean to say that he must select the safest possible way, it must be borne in mind that, had he walked along the platform built by his employer, instead of going over terra cotta work over which his master had no control, he would not have been injured.

The jury were, in effect, instructed that if appellant knew and appellee did not know of the condition of the terra cotta, and appellant failed to notify appellee of such condition, then, if appellant, in the exercise of due care, was injured in consequence of such condition, a verdict should be returned for appellant.

The instruction might well mislead, because the condition of the terra cotta being obvious, appellant was not required to give notice of what was apparent to appellee, who understood the mode of construction. This the jury might not understand. It is not so much knowledge as means of knowledge that is important.

The instructions are not otherwise free from fault.

Because it does not appear that appellant was, in stepping upon this terra cotta, in the exercise of ordinary care, the judgment of the Superior Court is reversed and the cause remanded.