Emma Boyd *v.* Jos. S. Harris, Edward M. Paxson and J. Lowber Welsh, Receivers of the Philadelphia & Reading Railroad Company, Appellants.

*Railroads—Location of cattle chute—Discretion of officers of company.*

The location and arrangement of a permanent structure, such as a cattle chute, necessary for the proper operation of a railroad, is within the discretion of the officers of the railroad company, and this discretion is to be exercised in view of the conformation of the surface, the character of the business to be accommodated, and the convenience of the servants and employees by whom it is to be carried on ; it is part and parcel of the work of construction, and is governed by the same principles.

*Negligence—Railroads—Location of cattle chute—Master and servant— Risk of employment.*

If a permanent structure, such as a cattle chute, is so located as to involve unusual danger to employees operating a railroad, it is the duty of the company to advise such of its employees as are exposed to the danger of its existence, or afford them an opportunity to know its character and extent by observation. On the other hand, the employees when they take service upon a railroad know that it is a service which exposes them to many dangers necessarily incident to the employment. The risk of these dangers they assume when they accept the employment. As between themselves and their employer, they undertake to exercise the measure of attention and care necessary to protect themselves from such danger, and if they fail in this respect and suffer injury in consequence, they are without remedy.

In an action by the widow of a brakeman against a railroad company to recover damages for her husband's death, it appeared that the death of the deceased was caused by a cattle chute alleged to have been located too close to the edge of the railroad track. The defendant requested the court to charge, that the "deceased for nearly two months passing almost daily, and sometimes several times a day, the point at which the accident occurred, and having taken cars out of the siding before, is presumed to have had knowledge of the situation of the structures at this point, and to have assumed the risks of his employment and dangers incident thereto, and the verdict must be for the defendant." This point was refused without any qualification or explanation, and the jury was told that "It will be for you to determine whether he had knowledge of its situation, that is of its proximity to the siding." *Held*, to be error, inasmuch as the question raised by the point was the legal effect of certain facts that were not in dispute, while the answer turned the question over to the jury to be solved as a question of fact.

A brakeman on a railroad was killed by coming in contact with a cattle chute alleged to have been located dangerously close to the track of a siding. There was some evidence tending to show that the track of the siding had been changed and brought nearer the cattle chute at one time, but it did not appear whether this was before or after the deceased had been upon the siding, or before or after his entering the service of the railroad company. *Held*, that if the change had been made before, the brakeman was warned to take notice when the opportunity to observe came to him; and if after, he was entitled to notice, or to a fair opportunity to observe.

Argued April 30, 1896.　Appeal, No. 212, Jan. T., 1896, by defendants, from judgment of C. P. Cumberland Co., on verdict for plaintiff.　Before GREEN, WILLIAMS, MCCOLLUM, DEAN and FELL, JJ.　Reversed.

Trespass for death of plaintiff's husband. At the trial it

appeared that on February 17, 1895, at about nine o'clock in the evening, Robert S. Boyd, plaintiff's husband, a brakeman in the employ of the defendants, was killed at Leesburg station. The accident was caused by the deceased colliding with a cattle chute which was alleged to have been located dangerously near to a siding. There was some evidence tending to show that the track of the siding had been brought nearer to the cattle chute at one time, but it did not appear whether this was before or after the deceased had been upon the siding, or before or after his entering the service of the defendant company. The evidence showed that the deceased had made numerous runs by the siding, and that he had been at least twice on the siding where he was killed.

Defendants' points and answers were among others as follows:

7. The deceased employee having been in the employ of the company, defendant, for nearly two months, passing almost daily and sometimes several times a day, the point at which the accident occurred, and having taken cars out of the siding before, is presumed to have had knowledge of the situation of the structures at this point and to have assumed the risks of his employment and dangers thereto, and the verdict must be for the defendant. *Answer:* We answer that we decline to instruct you that the deceased is presumed to have had knowledge of the situation of the chute at Leesburg. It will be for you to determine whether he had knowledge or ought to have had knowledge of its situation, that is, of its proximity to the siding. [1]

8. Under all the evidence in the case the verdict should be for the defendant. *Answer:* This point is refused. [2]

Verdict and judgment for plaintiff for $2,750. Defendants appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*J. W. Wetzel*, for appellants.—A servant or employee assumes the risks of all dangers in his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care: Pittsburg etc. R. R. v. Sentmeyer, 92 Pa. 276; Brossman v. Lehigh Val. R. R., 113 Pa. 490; Kelly v. B. & O. R. R., 11 Atl. Rep. 659; Lovejoy v.

Boston & Lowell R. R., 125 Mass. 79; Leary v. Boston & Albany R. R., 139 Mass. 580; Ballard v. New York etc. R. R., 126 Pa. 141; P. & R. R. R. Co. v. Hughes, 119 Pa. 301; Mensch v. R. R., 150 Pa. 598; Mixter v. Imperial Coal Co., 152 Pa. 397.

*A. G. Miller* and *W. F. Sadler*, for appellee.—The question of negligence should go to the jury: Ferry v. Manhattan R. R., 54 N. Y. 325; Crissey v. Hestonville etc. Pass. Ry., 75 Pa. 83; Penna. R. R. v. Barnett, 59 Pa. 259; Johnson v. Bruner, 61 Pa. 58; West Chester etc. R. R. v. McElwee, 67 Pa. 311; McKee v. Bidwell, 74 Pa. 218; Penna. R. R. v. White, 88 Pa. 327; Fritsch v. Allegheny, 91 Pa. 226; Baker v. Fehr, 97 Pa. 70; Schum v. Penna. R. R. Co., 107 Pa. 8; Penna. R. R. Co. v. Peters, 116 Pa. 206; Ellis v. Railroad, 138 Pa. 506; McGill v. Railway, 152 Pa. 331; Whitman v. Penna. R. R. Co., 156 Pa. 175; Baker v. Gas Co., 157 Pa. 593; Smith v. Balto. & Ohio R. R., 158 Pa. 82; Penna. R. R. v. Werner, 89 Pa. 59; Fisher v. Ry., 131 Pa. 292; Gtn. Pass. Ry. v. Walling, 97 Pa. 55.

The duties the defendant owed to Boyd: Tissue v. Balt. & Ohio R. R., 112 Pa. 98; Pass. Ry. v. Bresmer, 97 Pa. 103; Lewis v. Seifert, 116 Pa. 628; Phila., Wil. & Balt. R. R. v. Keenan, 103 Pa. 124; Rummell v. Dilworth, 111 Pa. 343; Rummell v. Dilworth, 131 Pa. 509; Trainor v. R. R., 137 Pa. 149; Penna. & N. Y. Canal & R. R. v. Mason, 109 Pa. 296; C. & I. R. R. v. Russell, 91 Ill. 298; Link v. R. R., 165 Pa. 75; Lederman v. R. R., 165 Pa. 118; Penna. R. R. v. Henderson, 51 Pa. 315; Fisk v. R. R., 158 Mass. 239.

As to contributory negligence: Penna. R. R. v. Werner, 89 Pa. 59; Penna. R. R. v. Weber, 76 Pa. 157; McGill v. Ry., 152 Pa. 331; Smith v. B. & O. R. R., 158 Pa. 82; Del. & Elec. R. R. v. Jones, 128 Pa. 308; Neslie v. Pass. Ry., 113 Pa. 300: Bradwell v. Ry., 139 Pa. 404; Gates v. Penna. R., 154 Pa. 567: Penna. R. R. v. Zink, 126 Pa. 288; Wagner v. Jayne Chemical Co., 147 Pa. 475; Brownfield v. Hughes, 128 Pa. 194; N. C. Ry. v. Husson, 101 Pa. 1; Tissue v. B. & O. R. R., 112 Pa. 91; Ferrne v. Old Colony R. R., 143 Mass. 197; Nugent v. B. C. R. R., 80 Me. 52; Marland v. R. R., 123 Pa. 487; McNeal v. R. R., 131 Pa. 184; Whitman v. Penna. R. R., 156 Pa. 175; Johnson v. Bruner, 61 Pa. 58.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896:

This case presents a question, the importance of which extends far beyond the present parties and the judgment to be entered herein.  It is whether the location of the permanent structures along a line of railroad necessary to accommodate its business is to be determined by the railroad company or by a petit jury.  If by the former, they may be located with reference to the convenient and economical use of the railroad and the accommodation of its traffic.  If by the latter, these considerations will be lost sight of, and the proper location will be a shifting one to be settled by each successive jury in accordance with its own notions and the peculiar features of the case on trial.  One jury may hold a given location to be safe and proper The next jury may hold it to be unsafe and therefore improper. There are many such structures necessary to the operation of a line of railroad.  Among the more important of them may be mentioned the bridges, station houses, grain elevators, warehouses, water tanks, coal chutes, cattle chutes, signal stations and tool houses.  The position of these buildings with reference to the track of the railroad, their size, and the mode of construction, must be determined with reference to their purpose and their convenient use as a necessary part of the physical plant of the railroad company.  Where they shall be placed and how they shall be arranged are questions that belong to the railroad company as truly as the location of the switches and sidings, or of the track itself; and the discretion of its officers is no more under the control of a petit jury in the one case than in the other.  This discretion is to be exercised in view of the conformation of the surface, the character of the business to be accommodated, and the convenience of the servants and employees by whom it is to be carried on.  It is part and parcel of the work of construction and is governed by the same principles.

If any of these structures are so located as to involve unusual danger to employees operating the railroad, it is the duty of the company to advise such of its employees as are exposed to the danger of its existence, or afford them an opportunity to know its character and extent by observation.  On the other hand, the employees when they take service upon a railroad know that it is a service which exposes them to many dangers necessarily incident to the employment.  The risk of these dangers

they assume when they accept the employment. As between themselves and their employer, they undertake to exercise the measure of attention and care necessary to protect themselves from such dangers, and if they fail in this respect and suffer injury in consequence, they are remediless. Our sympathies may be roused by the maimed employee, or in behalf of his helpless widow and orphaned children, but we are not at liberty to gratify our sentiments by charging against the employer the consequences of the folly or the neglect of the employee. This is well settled. It was said in Sentmeyer v. The Pittsburg and Connellsville Railroad Company, 92 Pa. 276, that an employee assumes the risk of all dangers incident to his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care. When he has been warned of the existence of any particular danger, or has had opportunity to learn of its existence, he is bound to take notice and to bring into his own service the requisite measure of observation and care for his own protection. This is an implied term or stipulation of his contract of service. He is bound to use his senses, and he "assumes such risks as are incident to the employment from causes that are open and obvious, the dangerous character of which he has had an opportunity to ascertain:" Brossman v. Lehigh Valley Railroad Co., 113 Pa. 490. This assumption embraces all such risks arising from his employment "as he knew, or in the exercise of a reasonable degree of prudence might have known," to be incident to his employment: Schall v. Cole, 107 Pa. 1. But descending from the statement of the general rule and applying it to particular facts, the cases are numerous. It was applied by this court in Kelly v. B. & O. Railroad Company, decided in 1887 and reported in 11 Atlantic Reporter, 659, to a case in which the danger arose from the location of an oil house between which and a passing train the distance was but eight inches. In several cases collected in 35 Am. & Eng. Railroad Cases, 265, it was applied to lumber piled near to the track. In 125 Mass. 79, to a signal post. In 83 Ala. 269, to a water pipe. In 63 N. Y. 449, to a projecting roof. To an overhead bridge in 104 Indiana 88. Cases are collected in the Am. & Eng. Ency. of Law, holding the same rule for other states including Iowa, Maryland, Michigan and New Jersey, and it seems to prevail very generally in this country.

The question was raised in this case by the seventh point on part of the defendant which asked an instruction to the effect that the " deceased for nearly two months passing almost daily, and sometimes several times a day, the point at which the accident occurred, and having taken cars out of the siding before, is presumed to have had knowledge of the situation of the structures at this point, and to have assumed the risks of his employment and dangers incident thereto, and the verdict must be for the defendant." This point was refused without any qualification or explanation, and the jury was told that " It will be for you to determine whether he had knowledge of its situation, that is, of its proximity to the siding." The point asked the court to declare the legal effect of certain facts that were not in dispute, as matter of law. The answer turned the question over to the jury to be solved as a question of fact.

The plaintiff's right to recover rested on the position that her husband had been exposed to an undisclosed and unknown danger, and had lost his life in consequence. The defendant's answer was that the danger was open and obvious, arising from the position of a structure that the deceased had passed many times, and on one or more occasions on the track of the siding where he was when the accident occurred. The facts set up in this answer were not denied. What was their legal effect? This, the court was asked to declare. The duty to observe and make himself acquainted with the obvious dangers to which his employment exposed him was on the deceased. The opportunity to observe, and acquire a knowledge of, these dangers had been enjoyed by him for many days. Under such circumstances, the fair legal presumption is that he had improved the opportunity to observe, and discharged the duty towards himself and his employer which his service required of him. If this proposition be denied then for how many more months must an employee pass a point of danger daily before the presumption will arise? Will it ever arise? Or must the question of actual knowledge be turned over to the jury to guess at in all such cases? The point was wanting in clearness of arrangement and expression, but it brought the attention of the court to the controlling question in this case as it is presented on this record. It was a question of law, if, as we understand, the facts grouped in the point were not in controversy, and it should have been treated as such.

There is some evidence tending to show that the track of the siding had been changed and brought nearer the cattle chute at one time, but it does not appear whether this was before or after the deceased had been upon the siding, or before or after his entering the service of the defendant company. If before, he was warned to take notice when the opportunity to observe came to him. If after, he was entitled to notice or to a fair opportunity to observe.

The first assignment of error is sustained and the judgment is reversed.