JOHN F. TAYLOR, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

NEGLIGENCE: Waiving Master's Negligence as Matter of Law.
1   A railroad engineer, *as a matter of law*, waives the negligence of his master when, daily, for three years, said engineer operates his engine, in the daytime, past a concrete abutment which, at all times, he fully knows was negligently constructed so perilously close to the track as to endanger the life of anyone who, while the engine was in motion, might even slightly lean from the engine cab, and who continues in such employment without complaint or promise of betterment.

**RELEASE:** Inadequate but Good-Faith Settlement. A non-fraud-ulent settlement and release for personal injury is irrevocable, even though time reveals the inadequacy of the amount paid.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

JANUARY 23, 1919.

REHEARING DENIED MAY 21, 1919.

ACTION to recover for personal injuries. Opinion states the issues and the facts. Directed verdict for the defendant. Plaintiff appeals.—*Affirmed.*

*R. L. Parrish,* for appellant.

*J. G. Gamble, F. W. Sargent,* and *J. H. Johnson,* for appellee.

GAYNOR, J.—Plaintiff brings this action to recover damages which it is alleged he sustained by reason of the negligence of the defendant. He claims that, on the 24th day of January, 1915, he was in the employ of the defendant, as engineer, running an engine on a passenger train en route from Valley Junction, Iowa, to Trenton, Missouri; that, in the discharge of his duty, he was compelled to pass under a certain viaduct; that an abutment supporting the viaduct was built too close to the track, and rendered the place exceedingly dangerous to one operating an engine over the road; that, just before the accident, his attention was attracted by what appeared to be the noise of water escaping from the injector of the engine through the waste pipe; that he looked out of the window to observe the cause of the escaping water, and was struck on the head by the abutment and greatly injured.

The defendant, for answer, alleges two defenses: That the plaintiff assumed the risk incident to the conditions of

*1. NEGLIGENCE: waiving master's negligence as matter of law.*

which he complains; that the abutment complained of was
permanent, and supported the viaduct over defendant's
track, and had been built and located as it was at the time
of the accident, for a long time; that plaintiff knew of the
location of the abutment and the distance between the abut-
ment and the track, and knew, or in the exercise of ordinary
care ought to have known, of the danger incident to strik-
ing the abutment, in the event of extending his head out-
side of the cab window while the train was passing; that,
notwithstanding the fact that he knew of the abutment,
knew of the location of the abutment and of the danger in-
cident to passing the same with his head out of the win-
dow, he nevertheless did extend his head out of the window
while passing, and in doing so assumed the risk of injury
from the striking of his head against the abutment. The de-
fendant also pleads settlement.

Upon the issues thus tendered, the cause was tried to a
jury. At the conclusion of the evidence, the court directed
a verdict for the defendant, and plaintiff appeals.

We may assume, for the purposes of this case, that the
defendant was negligent in having the abutment so close
to the track, and that this rendered the place dangerous and
unsafe. We may assume this without discussing the evi-
dence. This brings us to a consideration of the defenses
interposed, on both of which the burden of proof rests on
the defendant. We do not mean that the defendant is re-
quired to establish its defenses by evidence introduced on
its own behalf. They are sufficiently made out when a pre-
ponderance of the evidence submitted establishes them. To
justify a directed verdict, however, they must be shown by
the evidence, so clearly that reasonable minds, searching for
the truth touching the controverted matter, cannot differ
as to the conclusion that ought to be drawn from it. The
defenses are established as a matter of law, and no ques-
tion remains for jury consideration, when the evidence in-

'troduced by the plaintiff, viewed from all the points from which human intelligence can approach and analyze it, leaves the ultimate fact upon which the defense is predicated so clearly established that honest minds, searching for the truth, cannot differ as to the ultimate fact. Then, and only then, is the court right in saying that the defenses are established, and that plaintiff must go out of court.

We will consider the first proposition on which the defendant predicates its right to be relieved of liability.

The evidence discloses that the plaintiff had been engineer on this road for from four to five years; that this abutment was there, and in the same place, during all this time. He testified:

"The viaduct was there at the time I went to work. It had always been there. I had been passing it daily, for a matter of three years. There was nothing to keep me from seeing the abutment. The last stop before reaching the abutment was Chariton. This was about three quarters of a mile from the abutment. We were running, at the time, about 25 miles an hour. It was my duty to keep a sharp lookout ahead. I have no doubt that my fireman and myself had talked about this abutment before."

He was asked these questions, and gave the following answers:

"Q. Did you know of that abutment being close there? A. I had known of it, but at this particular time, that did not enter into this at all. Q. Was the viaduct there when you first went by? A. Yes. Q. Was it there every time you went by, up to the time of the accident? A. Yes, because it was there when I first began. Q. It was there all the time? A. I think so. That is my remembrance. Q. How often did you pass Chariton, in the regular course of your work, prior to the accident? A. On the daylight run, twice daily, and on the night run, once each 24 hours. Q. And about how long did you say you had been passing by

Chariton every day,—practically every day,—passing by this viaduct, before you had this accident? A. Well, I would say roughly, a matter of three years. Q. You knew this viaduct was there, didn't you? A. Yes, sir. Q. You knew that this was supported by a concrete abutment on the right-hand side of your engine as you went south? A. Yes, sir. Q. Did you know the speed of your train that day? A. Yes, practically. Q. Who had control of the speed? A. I did. Q. You handled the throttle and brake valve and things that made it go fast or slow? A. Yes, sir. Q. You knew practically how fast you were going? A. Practically so. Q. Was it daylight when this accident occurred? A. It was. Q. Was there anything to keep you from seeing this abutment? A. Not a thing. Q. You had passed it practically every day for three years? A. I think I am safe in saying that. Q. You knew, didn't you, how far the abutment was from the place you stopped at the station at Chariton? A. Yes. Q. Now I will ask you, Mr. Taylor, if it isn't a fact that, prior to the time of the accident, you had ample notice that the west end of this viaduct would not clear a man very far out of the side of the cab window on one of the kind of engines you were using, and that you and your fireman had talked about it before? A. I have no doubt we did. Q. That condition had existed all the time that you ran down there, had it not? A. I think so."

In a statement made by the plaintiff about a month after the accident, he said that there were no defects in or about the engine that had anything to do with the accident; that he had often noticed that this piling on the west end of the viaduct would not clear a man very far out of the cab window, and he had talked with the fireman about it before; that, just before the accident, he and the fireman had discussed the fact that this bridge was so close to the track on his side.

The fireman who attended plaintiff on the trip, called for the plaintiff, testified:

"The accident happened in daylight. It was not storming or snowing. The abutment extended about 15 feet high. It was about 12 feet wide. I had noticed this abutment as I passed along over the road. There was nothing to keep me from seeing it. I had noticed that it was close to the track, before the accident. It was plain to be seen."

This is practically all the evidence bearing upon the conditions that existed at the time of the accident, and plaintiff's knowledge of the conditions.

The question that presents itself here is whether or not this evidence is sufficient to show, and does show, the two facts essential to sustain defendant's contention that the plaintiff waived the negligence, and assumed the added risk due to this negligence, by continuing to work, without complaint, and without promise on the part of the defendant to have the conditions remedied.

This action is under the Federal Employers' Liability Act, and assumption of risk is a defense, and defendant has pleaded it as a defense.

It goes without saying that the servant assumes all the risks that are necessarily incident to the business, when the master has discharged his full duty to the servant in furnishing him a reasonably safe place to work and reasonably safe tools and appliances with which to do the work. These risks are necessarily incident to and inhere in the employment. These are unavoidable risks, intrinsic risks, and exist when the master has discharged all his masterial duties to the servant. For such risks the master is never liable, because it is no fault of his that they exist. He is not negligent in permitting them to exist. He owes no duty to the servant to dissipate them; for they cannot be dissipated. This kind of assumption of risk need not be pleaded.

The disposition of this case requires the consideration only of those added risks which grow out of the negligence of the master; out of his failure to discharge his masterial duties to the servant. This is what may be termed the secondary and ulterior risk, not necessarily incident to the business, and existing only because of the failure of the master to discharge his duty to the servant. This is the kind of risk we are now considering. The assumption of this kind of risk must be pleaded and proven, if relied upon.

We may assume that the defendant company was negligent in permitting this abutment to stand in such close proximity to the track. We may assume that danger arose from its proximity to the track. The question then is, Did the plaintiff then assume the added risk involved in the conditions thus negligently permitted, by continuing in the employment without complaint, and without promise of relief from such conditions?

To charge the plaintiff with assumption of this kind of risk, two things must appear: knowledge of the conditions which created the danger, and an appreciation of the danger attending the conditions. If, with knowledge and appreciation of the condition and danger, he enters the employment, or continues in the employment without complaint and without promise of repair, he assumes the risk due to such conditions.

Whenever a condition is permitted to exist, the existence of which violates some duty which the master owes to the servant, and the condition is attended by risk and hazard to the servant, the servant does not assume these risks, unless he has knowledge of the conditions which create the risk, and appreciates, or, as a reasonably prudent man, should appreciate, the hazard. If the servant actually knows, or, as a reasonably prudent man, should have known, of the risk attending his work, and the master's negligence, and he continues the service without com-

plaint, and without promise of repair, he stands in exactly the same position he would stand in were the risks such as were necessarily incident to the business. He assumes them, and by assuming, waives the negligence of the defendant. One who enters into an employment which is necessarily more or less dangerous is held to take these dangers into consideration, and is presumed, in making his contract, to have fixed his compensation so as to be commensurate with the danger. For injuries from such risks and dangers, he cannot recover.

Risks which arise from the master's negligence are not these ordinary risks that are assumed by the servant. Hence, the servant does not assume, in the contract of hire, dangers arising from conditions negligently created or permitted to exist. But if he knows of the master's negligence, knows that the conditions exist, the product of the master's negligence, and that these conditions increase the hazard of the employment, he may be held to have assumed them, and is held to have assumed them, or to have waived the master's negligence, when it is made to appear that he knew of the conditions and appreciated the added danger attending them; or, knowing of the conditions should, as a reasonably prudent man, have appreciated the added danger attending them. If, then, he continues in the service, without complaint and without promise of repair, and he is injured, he is without remedy. The conditions of which we are now speaking are those conditions which arise from the master's negligence, the existence of which the servant knows, and which are attended with appreciated danger. If, with such knowledge and appreciation, he continues in the employment, without complaint and without promise of repair, he is estopped to say that the master was negligent.

To distinguish this from the ordinary assumption of risk, it should really be called a waiver of the negligence of the master. The servant waives the negligence of the mas-

ter by continuing in the employment, with the knowledge and appreciation of the conditions created and the dangers that attend them. This kind of assumption of risk, or waiver of negligence, is chargeable to the servant whenever the conditions and danger are known or are plainly visible. The holding on this question is to the effect that the servant assumes the risk of those dangers due to the master's negligence that are known to him, and such as are plainly visible to him. The rule generally is that these unusual risks, these risks due to the negligence of the master, and which are not necessarily incident to the service, cannot be said to have been assumed by the employee, except when it is shown that he had full knowledge of their existence, or they are so plainly visible that ordinary care, consorting with reasonable intelligence, must bring a knowledge and appreciation of the danger. In other words, the courts hold to the doctrine that a man is charged with knowledge of that which is plainly visible to him. He is charged with knowledge of that which is so present to his faculties that, by their reasonable exercise, a knowledge of the thing complained of must come to him. No man is permitted to go to sleep at his post and then complain of injuries which result from his somnolent tendencies. The faculties for observation are given for use. Men do use them for the purpose of observation. They are presumed to exercise them with reasonable care for their own safety. They are charged with such knowledge as the reasonable exercise of these ordinary faculties would have brought. So it follows that, while knowledge is essential in the building up of this defense, one cannot be heard to say that he did not have knowledge, when it is shown that the thing complained of was of such a character and was so plainly visible to him that no man, exercising those faculties which are given him to guard him from injury, can, without stultifying himself, say that he did not know of its existence, and

did not appreciate the danger from its continuance. A man is charged with knowledge of that which plainly stands before his eyes. He is charged 'with knowledge of that which, had he exercised the slightest degree of care, could and would have been known to him.

Phrasing the thought differently, if the condition complained of, on which the negligence of the defendant is predicated, is so plain that the servant must know of it unless he shuts his eyes to his surroundings, he will be held to have known it, and to have assumed the risk, the same as if the master had directly called his attention to its existence, and had warned him against the danger. As said in *Campbell v. Mullen*, 60 Ill. App. 497, while knowledge is one of the elements of this defense, the fact of knowledge in building up this defense is assumed when it is shown that the defect complained of was so plainly visible that, had the servant exercised the slightest degree of care for his own safety, he must have known of the defect; and he cannot be permitted to predicate liability on want of knowledge, when it is shown that the defect complained of was visible and the danger easily appreciable to one who exercised the slightest degree of care for his own safety when approaching the danger. One is presumed to know that which, by the exercise of his ordinary faculties of observation, he ought to know. He is presumed to know that which men of ordinary intelligence, exercising reasonable care for their own safety, would know, and the same is true of dangers which flow from conditions existing. The rule laid down in the Federal courts is that the servant assumes all the risks arising from those dangers due to the master's negligence which are known to him, or which are plainly observable by him. Knowledge of the defect will be presumed, when the defect is plainly observable.

In *Choctaw, O. & G. R. Co. v. Holloway*, 191 U. S. 334 (48 L. Ed. 207), the action was predicated upon the negli-

gence of the defendant in failing to furnish the plaintiff, who was a fireman, with brakes on his engine. It was alleged that they were not in a fit condition for the work. The defense was founded on the fact that whatever risk arose from the defective engine was assumed by the plaintiff; that he had knowledge that the engine had no brakes; that he had used the engine prior to the time of the injury. The record disclosed that the plaintiff swore positively. that he didn't know of the absence of the brakes. The nisi prius court said to the jury, in substance, that it should determine whether the wheels of the engine, on which the brakes would be, could be seen from the position occupied by the fireman, without looking for them: that is, whether he could easily see that there were no brakes, and the court added the thought that a man cannot shut his eyes, and then say he did not see the thing which a reasonable man could not help seeing, if he kept his eyes open. It further said, in substance, that, if the fact that there were no brakes on the engine was obvious to any reasonably prudent man who runs on it as fireman for several hours, then he had knowledge, because he ought to have known it, and is chargeable with knowledge, the same as if he had known it. Justice Peckham, speaking for the Supreme Court, in commenting on this instruction, said, in substance:

"Taking the whole charge together, upon the subject of knowledge by the plaintiff of the absence of brakes on the engine, we think there was no error in the judge's charge. It amounted simply to a direction to the jury that the man was bound to use his eyes, and if, by their use, he could see that the machinery was defective, he was bound by that fact, even though in truth he had not observed it."

*McKee v. Chicago, R. I. & P. R. Co.*, 83 Iowa 616; *Perigo v. C., R. I. & P. R. Co.*, 52 Iowa 276; *Williams v. Delaware, L. & W. R. Co.*, 116 N. Y. 628 (22 N. E. 1117);

*Hooper v. Columbia & G. R. Co.,* 21 S. C. 541 (53 Am. Rep. 691); *Clark's Admr. v. Richmond & D. R. Co.,* 78 Va. 709 (49 Am. Rep. 394); *Brossman v. Lehigh Val. R. Co.,* 113 Pa. 490 (6 Atl. 226); *Baltimore & O. R. Co. v. Stricker,* 51 Md. 47 (34 Am. Rep. 291); *Illick v. Flint & P. M. R. Co.,* 67 Mich. 632 (35 N. W. 708); *Boyd v. Harris,* 176 Pa. 484 (35 Atl. 222); *Jacobs v. Southern R. Co.,* 241 U. S. 229.

In *Williams v. Delaware, L. & W. R. Co.,* supra, the plaintiff was a brakeman, and sought to recover for injuries sustained, alleged to have occurred by reason of the negligence of the defendant. The negligence consisted in the manner of constructing a bridge erected over the tracks. Plaintiff was on the top of the train, engaged in his duties there. The bridge was insufficient in height to allow plaintiff to discharge his duties upon the top of the train without coming in contact with the top of the bridge. The defendant sought to escape on the ground of contributory negligence. It became important, therefore, to determine whether the plaintiff knew, or should be charged, with knowledge of the peril. The court said:

"He was familiar with the locality. * * * He had, however, never measured its exact height from the platform, or its distance from the top of the cars. His information upon the subject was derived from general observation. In this case, the bridge crossing over the railroad was an open, visible, permanent structure, which the plaintiff daily observed while passing under it. * * * True, he had never measured its height, * * * but, having passed through under the bridge whilst on top of the cars, he must have known that it was not of sufficient height to permit him to stand while so passing. The rule is that a servant who enters upon employment from its nature hazardous, assumes the usual risks and perils of the service, and of the open, visible structures known to him, or

of which he must have known, had he exercised ordinary care and observation."

In *Boyd v. Harris,* supra, the Supreme Court of Pennsylvania used this language:

"The plaintiff's right to recover rested on the proposition that her husband had been exposed to an undisclosed and unknown danger, and had lost his life in consequence. The defendant's answer was that the danger was open and obvious, arising from the position of the structure that the deceased had passed many times, and on one or more occasions on the track of the siding where he was when the accident occurred. * * * The duty to observe, and make himself acquainted with, the obvious dangers to which his employment exposed him, was on the deceased. The opportunity to observe and acquire a knowledge of these dangers had been enjoyed by him for many days. Under such circumstances, the fair legal presumption is that he had improved the opportunity to observe, and discharged the duty towards himself and his employer which his service required of him. If this proposition be denied, then for how many more months must an employee pass a point of danger daily before the presumption will arise? Will it ever arise? Or must the question of actual knowledge be turned over to the jury to guess at in all such cases?"

These cases settle the doctrine that it is the duty of the servant to obtain knowledge of the conditions surrounding him which could be obtained readily by observation, and if the knowledge could be obtained by a reasonable exercise of his faculties, he is presumed to have that knowledge, because a man is presumed to make reasonable use of his faculties for his own safety. He is not only presumed to do so, but it is his duty to do so.

In the case at bar, each time the plaintiff passed this bridge it was open to his observation. Assuming the abutment to be as close as plaintiff now claims it was, assum-

ing that it rendered it dangerous and unsafe for anyone to protrude his head through the window, yet he had passed it daily for several years, and had an opportunity of observing and knowing the very danger which overtook him and caused his injury. To say that he did not know of the proximity of this abutment to the passing train would be to flatly contradict what the record discloses. That he must have appreciated the danger incident to protruding his head through the window is just as certain; for no man could believe that to put himself in a position to come in contact with this abutment, while upon a fast moving train, could be other than disastrous.

This case differs from *Stomne v. Hanford Produce Co.*, 108 Iowa 137, and like cases, for the reason that, though the defect in the cable was known to the injured party, there was a question for the jury as to whether or not the use of the elevator, with the defective cable, rendered the act of use dangerous and unsafe to the operator. In the case at bar, the doing of the thing which plaintiff did, knowing, as he did, the proximity of the abutment, made the injury inevitable, and certain to follow the act.

Applying the law as herein stated to the facts as disclosed by this record, we are satisfied that the court did not err in directing the jury to return a verdict for the defendant. Any other verdict would not have had support in this record.

We do not discuss the issue tendered by the second defense, for the reason that there was no liability. We are inclined, however, to the thought that this defense is also good, for the reason that no fraud is shown

2. RELEASE: inadequate but good-faith settlement.

to have been practiced in procuring the settlement. The settlement was made after the plaintiff had recovered from his injuries, and when, as this record discloses, he was in full possession of his faculties, knew the cause and extent of his in-

juries, and the settlement and its terms were proposed and fixed by him. He was neither led nor betrayed into it by anything done by the other party. A settlement is a contract, and is binding unless avoided by fraud or mistake. The mere fact, if it should be a fact, that it subsequently appeared that the settlement did not give to the injured party full compensation, does not render the settlement void.

Upon the whole record, we think the court was right in directing a verdict, and the cause is—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.