ATOKA COAL & MINING CO. VS MILLER.

Opinion rendered September 26, 1907.

1. *Trial—Requested Instructions.*

It is not error to refuse requested instructions when they are given by the court in different language.

2. *Master and Servant—Master's Liabilities—Sufficient Evidence—Negligence of Master.*

In an action by a servant for personal injuries, evidence held sufficient to sustain a verdict for plaintiff on ground of negligence of defendant.

3. *Same—Question for Jury—Contributory Negligence.*

In an action by a servant for personal injuries received while throwing a switch in a mine, whether plaintiff was guilty of contributory negligence was held a question for the jury to decide.

4. *Same—Sufficient Evidence.*

In an action by a mule driver for injuries received while throwing a switch in a mine, evidence was held sufficient to sustain a verdict for plaintiff on the theory that he was not guilty of contributory negligence in going outside his duties, or for violatng rules made by his master.

5. *Same—Fellow Servant's Negligence.*

In an action for personal injuries received by a mule driver while throwing a switch in a mine, evidence was held sufficient to sustain a verdict for plaintiff on the theory that the accident did not result from the negligence of a fellow servant.

6. *Appeal—Evidence Admitted—Harmless Error—Remittitur.*

In an action by a servant for injuries received in being struck by a cable as a result of a defective pulley attachment, the admission of evidence as to omissions of negligence of defendant, in the absence of allegations in the complaint in regard thereto, was held harmless error in view of a requirement of a remittitur of $3,500 before overruling a motion for a new trial.

7. *Master and Servant—Servant's Injuries—Verdict.*

In an action brought by a servant for personal injuries, the defendant cannot be found guilty of negligence in case the cause of the accident was not the cause alleged.

8. *Same—Master's Duty—Place of Safety—Suitable Materials.*

Though a master does not insure the safety of his servants, it is his duty to furnish a place of safety in which they shall work and suitable materials to work with.

9. *Same—Master's Care of Machinery—Repairs.*

While a master is not an insurer that the machinery used in his business is proper or suitable, he is bound to use ordinary and reasonable care and skill in the selection and construction of same, and to keep it thereafter in suitable repair.

10. *Same—Contributory Negligence—Doctrine's Application.*

A servant owes to the master the duty of using ordinary care to avoid danger wherever his proper duties may call him, and he cannot recover for an injury which he would not have sustained but for his own negligent act, however negligent his master may have been in relation thereto.

11. *Same—Risks Which Servant Assumes.*

A servant assumes all the risks which ordinarily pertain to his employment, and dangers such as are known to him or discoverable through ordinary care on his part.

12. *Same—Master's Liability.*

In the absence of contributory negligence, a master is liable for negligence in not keeping the machinery in proper repair, if the accident resulted from particular parts which were alleged defective in the complaint, but the master is not liable if the machinery was in a reasonably safe condition, or if the part alleged to be defective did not cause the injury.

13. *Contributory Negligence.*

> Contributory negligence is a negligent act which plaintiff committed and which was the proximate cause of his injury.

14. *Master and Servant—Knowledge of Rule Violated.*

> A servant cannot recover for an injury received while violating a rule of which he had knowledge, or which by reasonable care he could have known.

15. *Same—Reasonableness of Rules.*

> Where the cars in a mine were hauled up and let down a grade in a shaft by a cable passing around a large wheel and crossed in front, the ends of which passing down a shaft were separated by smaller pulleys, and the brake for the wheel and the switch for tracks were situated between the ropes, a rule made by the mining company that the switch should not be thrown while the cables were running would be a reasonable rule which the company would have a reasonable right to make and which the employes should obey.

16. *Same—Servant's Duty to Learn Rules.*

> The servant must use reasonable care to learn the rules made by the master before entering upon duties in a place of danger and where accidents would be more dangerous than elsewhere.

17. *Same—Risk Assumed—Voluntary Act Outside of Duties.*

> Where a servant goes outside of his duties and voluntarily undertakes to do other work, the law will presume that he knew the rules of the master in relation to the work undertaken.

18. *Same—Obedience to Direction of one not in Authority.*

> A servant is not relieved from contributory negligence when he disobeys rules which he did not know when he undertakes to work outside his regular duties under the direction of one who has no authority to direct him.

19. *Same—Negligence of Fellow Servant.*

> If a servant is injured through the carelessness of a fellow servant and not the negligence of the master, he cannot recover from the master therefor.

20. *Same Concurring Negligence.*

> If an injury to a servant is the fellow servant's and master's negligence concurring, and the injury would not have occurred but for the negligence of the master the master is liable.

21.  *Same—Machinery—Duty to Inspect Same.*

   If an injury to a servant is caused which could have been discovered
   by a proper inspection, the master is liable.

22.  *Same—Actions—Sufficiency of Evidence.*

   To recover in a personal injury action, the servant must show by
   evidence that the accident was caused by one or more of the specific
   defects alleged in his complaint.

23.  *Same—Credibility of Witnesses.*

   Where there is conflicting evidence, it is the duty of the jury to re-
   concile it if possible, but if it is irreconcilable, they are to determine
   which witness they will believe, by his appearance on the stand,
   his apparent frankness or want of frankness, his opportunity for
   knowing the things to which he has testified, whether or not he
   has been corroborated or impeached, and his motive, if any, to
   swerve from the truth.

24.  *Damages—Personal Injuries.*

   In an action by a servant for personal injuries, if the jury finds for
   plaintiff they have a right to award the damages they deem proper,
   taking into consideration the injury inflicted, and the pain and
   suffering undergone, permanent injury sustained, disability resulting
   from injury which renders him less able to attend to his work, the
   time actually lost and any mental suffering endured.

   Appeal from the United States Court for the Central
District of the Indian Territory; before Justice W. H. H. Clayton,
Oct. 18, 1901.

   Action by Dave Miller against the Atoka Coal & Mining
Company.  From a judgment for plaintiff, defendant appeals.
Affirmed.

   *Ira D. Oglesby,* for appellant.

   *C. B. Randell, Stuart & Gordon, Wilkins, Vinson & More,*
for appellee.

   GILL, C. J.  In this case there are 24 assignments of
error, all of which except the first six are directed at the giving
or refusing to give instructions.  In the view of the court it
will be unnecessary to take up in detail assignments 2 to 6,

inclusive, and 24. These each bear upon the admission of evidence, and the court is of opinion that no error was committed by the court as complained of in these assignments. Nor will it be necessary to pass upon in detail assignments 7 to 13, inclusive, as these relate to requests for particular instructions, which were in effect given by the court, although in different language from that asked by the appellant. Nor is it necessary to discuss separately assignments 15, 16, 18, 19, 20, 21, and 22 as each of these relate to an instruction of the court, which we think were all properly given and stated the law correctly. This leaves to be considered assignments 1, 14, 17 and 23, which may well be considered together. The history of the case is about as follows; This is a suit for damages by Dave Miller against the Atoka Coal & Mining Company, the former being the plaintiff below and the appellee in this court and the latter being the defendant below and the appellant here. It appears from the evidence that the appellee was employed by the appellant as a mule driver in mine No. 6, one of the appellant's coal mines situated about 10 miles northwest of Atoka, Ind. Ter.; That while in the employe of the appellant the appellee, on or about December 7, 1899, was injured, sustaining a fracture of the right ankle and of the bone above the ankle from which he claims to have been painfully and permanently injured. He alleged that he was damaged in the sum of $25,000. The jury rendered a verdict for $8000. In overruling a motion for a new trial, the trial court required the entering of a remittitur of $3,500, and upon the entering of such remittitur rendered judgmentin the amount of $4,500.

The accident occurred underground at the top of a grade leading down to the pit or shaft. The passage up this grade had a double track almost to the top, one track being for the loaded cars to descend and the other for the empty cars to ascend the grade. Near the top of the grade these two tracks converged into one, which again divided into two tracks

which ran off to the right and left into a passage at right angles with the one already described, and one of these was again divided by means of a switch into a double track, one being for loaded and one for empty cars. At the top of the main passage leading down to the pit or shaft a niche was cut in the wall of the passage where a large wheel five or six feet in diameter was operated in a horizontal position. Immediately in front and at the sides of this wheel were two small wheels one on each side, and also operated in a horizontal position. They were rigged up between two pieces of timber, one above the other, whose ends were imbedded in the walls on either side. These two timbers were held together by bolts running perpendicularly through the two at either end and kept sufficiently apart to allow for the play of the two smaller wheels by blocks just inside the bolts mentioned. A steel rope was operated on the big wheel, which after passing around the large wheel as on a pulley crossed in front of the large wheel and passed on the outside of the smaller wheels, one on one side and one on the other. The ends of this rope were attached to the cars operated on the double track in the main passage leading from the bottom of the shaft or pit up to the apparatus just described, at the top; the momentum of the loaded cars descending the grade being utilized to draw the empties to the top. The speed of the big wheel was controlled by a brake, and there was a man employed whose duty the appellant claims was to operate this brake and turn the switch at the top of the grade. The smaller wheels above referred to were operated on an axle whose ends were secured by eyebolts which ran through the timbers between which they ran and which were secured on the other side by nuts. The rope was crossed in front of the big wheel to give it sufficient adhesion to its surface so that it would not slip when the wheelman was operating the brake to control the speed of the trip, as it is called. The small wheels serve the purpose of holding the ropes on either

side apart.  If there was any considerable weight attached to each end of the rope and the trip was in operation and either or both of the two smaller wheels were to give way, the weight would tend to pull the ropes together with considerable force, according to the amount of weight and speed attained at the time.  On the day in question while a trip was in operation and the ropes were running, the appellee stepped inside of the running ropes to turn the switch so the empties coming up could take the proper track.  One of the eyelets which he alleges was in an unsafe condition of which the appellant had notice or could and should have known about had it exercised ordinary care, straightened out, loosening the end of the axle which it held and the rope which passed around the wheel, and the weight of the trip caused it to jerk over to the opposite side, striking the appellee in the leg and causing the injury he sustained.

The appellee has alleged in his complaint and introduced evidence tending to show that he was rightfully in the place, in the performance of his duties as mule driver, at the time of the accident, and that it was customary for the drivers or any other person who happened to be around to turn the switch. He testified that he had been told to do so on at least one former occasion by his boss.  The testimony of all the witnesses tends to show that the switch was turned sometimes by one and sometimes by another.  The evidence tends to show that one of the eyelets was cracked and that the axle passing through the same was bent and that it had been in that condition for sometime prior to the accident.  It tends to show that some of the employees whose duty it was to inspect the machinery and keep it in a safe condition or to report the damaged condition to their superiors knew about the weakened condition of this machinery and had patched or repaired it on a former occasion. And the theory of the appellee is that he was injured, while in the rightful performance of his duties, by reason of a breakage in the machinery, caused by a defect therein known to the

appellant, or which could and should have been known had it exercised ordinary care in the inspection of its machinery.

On the other hand the appellant claims and has introduced evidence showing that immediately after the accident the cars of the trip running at the time of the accident were found in a wrecked condition at the point of passage. And it advances the theory that the wrecking of the cars caused an unusual strain upon the wheel above, making them give way with the resulting injury to the appellee. And that the wrecking of the cars being the proximate cause of the accident, and not alleged in the complaint, the appellee cannot recover. The only evidence on his point, however, is the finding of the wrecked cars subsequent to the accident. And in view of the testimony showing the prior weakened condition of the eyebolt, and that the axle of the small wheel was bent, we believe that the jury was right in finding that the breakage of the machinery above caused the wreck below, rather than that the wreck caused the breakage in the machinery. At any rate, this is a question of fact for the jury, and we will not disturb their finding on this score.

The appellant also raised the question of contributory negligence on the part of the appellee. Its evidence is very positive that it was the duty of the wheelman to turn the switch and that it was against their rules for any one to step between the ropes while in motion. These rules were partly printed and partly verbal. Each employe was furnished a copy of the printed rules, and the various bosses were supposed to instruct the men as to the verbal rules. But it seems that it was customary for the wheelman to turn the switch sometimes and for the drivers to do it sometimes. It is admitted that the printed rules do not contain the rules as to whose duty it was to turn the switch, nor as to the prohibition of any one stepping between the ropes while running. Its evidence shows that the

existence of these rules was brought home to some of the men, but they have not shown that they were brought to the knowledge of the appellee. Therefore, if the appellee did not know of these rules, and there was something in the very nature of the machinery and surroundings to cause a man of ordinary intelligence and prudence to know that it was dangerous to step between the ropes while running, the appellee would not be barred from recovery. At any rate the question of contributory negligence is one of fact for the jury and in view of the evidence in this case we do not feel disposed to disturb their findings on this point. Another question involved in this case is the question as to whether or not the accident was the result of the negligence of a fellow servant. We do not believe that the evidence in this case supports the theory, and will not disturb the finding of the jury on this point.

The appellant also complains because of the introduction of evidence that the company was negligent in failing to plant posts to catch the ropes in case of an accident like the one in this case, and because such a theory is not incorporated by proper allegation in the complaint. It also complains of that part of the judge's instructions which deals with the theory above stated. The evidence on this question is there were no such posts used in connection with the machinery at the point where the accident occurred, and that in the opinion of the witness it would be safer to have them. And there was no evidence that it was usual and customary to have such posts in connection with similar machinery in other mines. We believe that inasmuch as the complaint was not drawn upon the theory above stated, and in view of the character of the evidence in connection therewith, that the court erred in the admission of such evidence and in instructing the jury upon such theory and we further believe that the court should have given the appellant's instruction No. 11 eliminating this theory from the case, although, had the complaint been drawn upon

this theory and the evidence supported it, we could find no fault with the action of the court in this respect. It is true that the admission of the evidence and the instruction to the jury upon this question may have influenced the jury in determining the amount of damage in this case, but in view of the other evidence in the case we believe that had this evidence been excluded and had they not been instructed on this point their verdict would have been for the appellee just the same. And in view of the remittitur of $3,500 required by the court before overruling the motion for a new trial, equalizing the damage with the injury sustained, we believe that the admission of this evidence and the giving of these instructions have not been prejudicial to the appellant in this case. And we refuse to reverse the case on these grounds.

The appellant has asked for several instructions which the court refused. With the exception above mentioned all that was good in the instructions refused was amply covered by other instructions given by the court, and, therefore, their refusal was not prejudicial to the appellant.

In view of the remarkably true and accurate exposition of the law governing personal injury cases of this character, and the clear and lucid interpretation thereof given by the Hon. Wm. H. H. Clayton, Judge of the United States Court for the Central district of the Indian Territory, in his instructions to the jury, we believe that it is unnecessary for us to discuss the law applicable in this case, and instead have adopted his exposition thereof as given of his own motion in his instructions to the jury. The instructions given to the jury by the trial court of his own motion are as follows:

"This is an action brought by the plaintiff, Dave Miller, against the defendant the Atoka Coal & Mining Company, for the recovery of certain damages which the plaintiff claimed he is entitled to from the defendant because of certain injuries done him,

9

the plaintiff, which he alleges, were caused by the negligent conduct of the defendant. The plaintiff in his complaint alleges, substantially, that the defendant is a corporation; that it was engaged in the business of operating a coal mine at Lehigh in the Central district of the Indian Territory, and that while so engaged the plaintiff was employed in the mines of the defendant to perform the duties of a mule driver; that while he was so regularly employed, and in the proper discharge of his duties, by virtue of certain defects in the machinery, which, defects, he alleges, were caused by the negligent conduct of the defendant, certain ropes were thrown loose and crossed each other; and that they violently struck him and injured him, by breaking his leg in two places and otherwise injuring him, for which the plaintiff charges as follows (I will read a portion of the complaint): 'Plaintiff further avers and charges that at the time he was injured plaintiff was in the act of throwing a switch on the south incline in mine No. 6, so as to run moving empty coal cars onto the north entry in said mine, which it was plaintiffs duty to do in the course of his employment, and was his customary work, and while so acting, the axles of the sheave or "shiv" wheels and the eyebolts, sockets, rivets, joints and fastenings of said wheels, holding said wheels in place, became loose, and were worn, cracked, slipped, and broke, and permitted the wire rope or cables extending around said wheels and used in moving cars in said mine to come together suddenly and violently and catching and striking plaintiff's said right leg and ankle at the place where the same were broken as aforesaid, thereby throwing plaintiff down, and knocking him senseless, and injuring plaintiff as aforesaid. Plaintiff avers that the cause of the said sheave wheels, eyebolts, sockets, rivets, joints and fastenings of the said wheels, holding said wheels in place, becoming worn and cracking, slipping and breaking and permitting the said ropes or cables to come together and injuring plaintiff aforesaid, was that the same were improperly and

unskillfully constructed, each being too small and weak, old, worn, and cracked, and without braces or safeguards, and out of unsuitable material, the same being rotten, rusty, cracked, and of insufficient size and strength, and because the defendant had negligently permitted the same to become so worn and out of repair as to be dangerous and unsafe, and defendant negligently failed to construct and maintain safeguards to catch said cable or rope if the same should become loose, as it was its duty to do.'

"Now, these are the acts of negligence which the plaintiff charges the defendant to have been guilty of, and in the consideration of this case, gentlemen, you must direct your attention to these particular causes for the action as alleged by the plaintiff. You will not be permitted to find the defendant guilty of negligence if you shall discover that the cause of the accident was any other than that alleged in the complaint. That the employment existed between these parties, that the relationship of master and servant, or employer and employee, existed, is established. About that there is no contention. The defendant answering the complaint, denies every allegation in it. Every allegation that is contained in the complaint is denied generally and specifically by the defendant. The principal denial, however, is to the effect that, if this man was hurt where he says he was hurt, then they were not guilty of negligence; that it was not caused by the negligent act of the defendant. And the defendant also alleges that if he were hurt, even if there were negligence on the part of defendant, the plaintiff himself, the injured party, was guilty of what is known as contributory negligence, which will be explained to you further on.

"First, then, what are the duties that each of these parties in connection with this employment owed to the other— what are their respective duties? In the first place, it is the

duty of the master or employer to furnish a reasonably safe place in which to work, with safe and suitable materials with which to work. He owes that to the plaintiff. He owes that duty to his employees. But the master is not an insurer of the servants. He does not insure their safety. And while a master is not an insurer that the workmanship or materials employed in its business are absolutely proper or suitable, yet he is bound to use all reasonable care and skill in their selection and construction, so far as regards the safety of the persons in its employ, he is required to use reasonable care and skill also in order to maintain them in a suitable and safe condition. He is not an insurer; but he is only required to use ordinary care and prudence with regard to the construction of the machinery and with regard to keeping it in suitable repair thereafter. And if he use ordinary care in the selection of the machinery and appliances, and ordinary care in keeping it in proper condition, that is all that is required. The fact that an injury develops a defect that could not have been discovered by ordinary inspection, if ordinary care in the selection and inspection of the appliances were used, does not render the master liable. By ordinary care is meant such care as a person of ordinary prudence would exercise. You take into consideration all of the circumstances of the case to determine what a prudent man would ordinarily do under such circumstances, and whatever he would do under such circumstances the employer is required to do before he shall have done his duty; but when he shall have done that, then he has done his full duty as far as this matter is concerned to his servant. Of course as the danger increases, that which would ordinarily be care and prudence would increase. A prudent man would not be so careful in a place where there was but little danger as he would be in a place where there was great danger; and therefore, when you come to measure the degree of care which the master is to exercise and to use in the construction of the

instrument and the selection of the machinery that go into it and to keep it in repair, you take into consideration all of the circumstances of the case—was it a dangerous place or was it not a dangerous place, or what were its conditions. Whatever its conditions were, then under those circumstances the master was required to use such care in these matters as an ordinarily prudent man would use. Now I have said when he has done that he has done his full duty as far as the charge against the defendant in this case is concerned.

"Now then, what was the duty of the plaintiff? He owes certain duties to the master as well as the master to him. In the first place, gentlemen of the jury, as relates to him, I will state to you that it is the duty of the servant to use care—to use such care when he is in and about the machinery in the mine or wherever his proper business might call him—to use such care and prudence in avoiding danger. If he does not do this and is injured because of a want of care and prudence, however, negligent the master may have been, however imperfect this machinery may have been by the negligence of the master, he cannot recover. Not only must he use care and diligence with regard to this matter, but he actually takes all of the risks which are incident to his employment. If he enters upon a dangerous employment, he knows that his business is a dangerous business, and all of the risks that ordinarily pertain to that employment he assumed himself. He cannot charge his master with that. The servant is held by his contract of hire to assume the risk of injury which are the ordinary dangers of the employment; that is to say, they are such dangers as are known to him or discoverable by the exercise of ordinary care on his part. He has, therefore no right of action in general against his master for an injury befalling him from such cause. His right to recover will often depend upon his knowledge or ignorance of the danger, if he knew of it, or was under a legal obligation to know it; and that legal obligation is that if the

danger be discoverable by the exercise of ordinary care on his part, then it was a part of his contract and he cannot recover if injured. Now, you see, he assumes this risk of all the dangers incident to the work, and if the danger is such—if he knows that there will be danger or by ordinary care might have known it, by proper care might have discovered the danger—then he assumes the risk of that also, and the master is not chargeable.

"Now, gentlemen, before the plaintiff can recover in this case, he must show that the defendant was negligent with regard to the construction of this machinery, and I have told you as to the degree of negligence he must show—that it did not use ordinary care in these matters. As to that you go to the proof. You go to the machinery and examine it as the proof shows it to have been at that time. Was it in good repair? Was it sufficiently strong to perform its work? Were the timbers sound? Was the iron bolt sound and composed of proper material? Were these defects in the iron such as to render it dangerous? If you conclude that the machinery was in a safe condition, reasonably safe condition, then of course you stop right there and return your verdict for the defendant. If you shall find, however, that there were parts of it which were not in a safe condition, but that the wreck or the accident was not caused by the defect in that particular part of the machinery, then the defendant cannot be charged with negligence as to that, because the defect or the negligent act must have been the proximate cause of the injury, and the plaintiff cannot recover in this case by showing that something else than that which he has alleged caused the accident. Neither can he recover if it be shown that the machinery was imperfect in some particular, but that that imperfection had nothing to do with the accident. He cannot do that. It must be first determined that the particular parts of this machinery named in the complaint were defective in the manner alleged in the

complaint, and then that the accident resulted from that defect. If you find that the machinery, then, was defective in some of the particulars mentioned in the complaint, and that that defect was attributable to the negligence of the defendant and that the accident occurred because of that—that is, that without that it would not have occurred—then the court instructs you that the defendant would be guilty of negligence and the plaintiff would be entitled to recover—provided the plaintiff himself was not guilty of contributory negligence.

"What is contributory negligence? Contributory negligence is a negligent act of his own, committed by him, which was the proximate cause of his being injured; and by proximate cause, we mean simply this: that if he had not committed the negligent act he would not have been hurt. And that may be true, although the accident to the machinery may have happened. If he would not have been hurt, although the accident to the machinery did happen, if he would not have been hurt but because of his own negligent act, then his negligent act is the cause of the injury; and no matter, as I said a while ago, however negligent the defendant may have been, no matter however defective that machinery may have been, he cannot recover, because the fault was his own in using negligence which contributed to his injury. Now, then, that being true, an important question in this case is, if you shall have determined that there was negligence upon the part of the defendant, then the very next inquiry is whether there was contributory negligence upon the part of the plaintiff.

"The court instructs you that if the company had certain rules and regulations which were reasonable rules, and which they had a right to make such as that the switch should not be thrown while the ropes were moving, and that the rule was known to the plaintiff, or by reasonable care could have been known to the plaintiff, and in violation of that rule he went

between these ropes while they were running to throw the switch, and was there hurt, he cannot recover. He cannot recover, because he did it while transgressing the rules which by the very nature of his contract the law requires him to obey if they were reasonable rules. And the court says to you that a rule providing that switches should not be thrown when the ropes were moving was a reasonable rule, one that the company had a right to make, and when made had the right to enforce, and that it was the duty of the plaintiff to obey. Two questions are involved here: Was the rule made? Was it a rule of the company that men should not pass between those ropes when they were running, or that the switch should not be thrown while they were running? Did they make that rule? If so, the court again says to you it was a reasonable rule and should have been obeyed. Secondly, did the plaintiff know, or by the use of reasonable care could he have discovered it? It is the duty of a man at work not simply to do blindly and pay no attention to the rules of the company for which he is working. These rules are made for the preservation of his life and the lives of the others. If they are reasonable, they are made for his benefit and he must obey them at his peril. Now then, did the company do it? I say it is not sufficient for him to stand back and say 'I did not know the rules' if he took no pains to discover them. Was the condition such there as to show to him that there was danger in going between these ropes—danger not only when they are running along without accident but if an accident should occurr was it a more dangerous place than others? If so that would put him more strongly upon his inquiry. He must use reasonable care before entering upon any duty of that kind where it is a dangerous employment to ascertain what the rules of the company were. Now, you take into consideration all the evidence in this case in determining that fact, and if you find that he knew what the rules of the company were, and in violation of those rules

he went between those wires then he was negligent. That was contributory negligence, providing there was such a rule, and I repeat he cannot recover. In such case your verdict must be for the defendant. If the plaintiff was employed as a mule driver, and it was a part of his duty as a mule driver to throw the switches, then when he was injured he was at a place where he had the right to be, providing he was not there between the ropes while they were running, should there have been such a rule, and it was his duty to do so. But if it were not his duty, if it were not a part of his work to go in there, then he was at a place where he had no right to be; not as a trespasser—he had the right, practically, to be there as well as anywhere else—but there is a different rule of law. If he is at a place where he has been sent by those in charge over him, and confined to that particular work, then in that case, if he does not know the rules, he must use ordinary care to know them but if he goes outside of the place of his employment and without orders from proper authority undertakes to do work at another place, although he may have been ordered to do so by a man who had no authority to direct him, then in such case he is held to know the rules at all hazards, and the question as to whether he could have known it by ordinary care or not, is not before you, because the law assumes that he knew it. He must not go into another part of the mine and engage voluntarily, or by the direction of a man who has no authority to direct him, in work elsewhere in the mine without absolutely knowing or finding out what the rules are, especially when he goes into dangerous places. Therefore, if you find that there was such a rule, and that the plaintiff was not in discharge of the duties assigned him, but was at work at the place assigned to another department, under a man acting upon other directions and governed by other rules, then I say he would be guilty of contributory negligence. And this will depend entirely upon the question as to whether or not the mule drivers were au-

thorized to throw these switches.  Now, the authority must come from some one having the right to act. If the pit boss, in dividing his business, puts one man to run the ropes and perform certain duties there, and says to him:  'It is your duty to throw these switches.  That is your duty'—prescribes that duty to him and says to the mule driver that certain other things are your duty, then a man engaged in driving the mule, who comes over into the other department and undertakes to do work that is contrary to the rules, then he is held to know the rules and he cannot recover for an injury that he has received by virtue of being at a place prohibited by the rules.  The rules are made for something.  They are made for something. The very purpose, as I said a while ago, is that they are made in order that men's lives and limbs may be saved, and being made for their benefit they must obey them or take the consequences.

"There is another matter upon which there is some evidence, and it becomes necessary to instruct you upon it. The plaintiff charges that the defendant was guilty of negligence in not erecting certain posts as guides for the ropes as they went backwards and forwards to prevent them from coming together and injuring parties who might be between them.  As to that, gentlemen of the jury, if you find from the proof that the placing of such posts were feasible and were proper to be constructed there and ought to have been constructed, that it would be the duty, in the exercise of ordinary care upon the part of the defendant, to have constructed those posts, primarily, if they were not constructed it would be an act of negligence, but at the same time the court instructs you with regard to that, it is the duty of the plaintiff to keep his eye about him.  If the plaintiff be an experienced man, or whether he be an experienced man or not, it is his duty to look and observe, and if he is an experienced man, and is in a condition to know that it was danger-

ous not to have these posts put there, and you are to judge
of that, from his experience, and after he has been before you
from his apparent intelligence, if he could judge and know as
well as the master or better, that it was not safe to work there
without posts, or that they should be there to make it safe
and knowing that they were not there, or by reasonable fore-
sight and the exercise of his faculties could have known that
they were not there, then the court instructs you that his
very act of working in a place which he knew was not made
safe is a bar to his recovery upon that ground.    Upon that
ground you cannot find that the company was guilty of negli-
gence which is actionable if the posts were not there, when
the plaintiff made no complaint that they were not there,
and the evidence does not show that he made any, if he was in
as good an attitude as the defendant in the case to see that
they were not there and to appreciate the danger of their not
being there, but notwithstanding that he goes to work and
works until the accident occurrs, then he cannot successfully
plead that as against the defendant, because when that con-
dition exists the law says that he assumes the risks himself.
If you find, however, that it was not a necessity to have these
posts, and that they could not have been placed there without
materially interfering with the work of the company, then
the company would not be liable, although the posts would have
bettered the condition and would have made the work less
hazardous and dangerous; but in case you find that they ought
to have been put there, and that it would be an act of negligence
upon the part of the defendant not to put them there, still,
if the plaintiff knew they were not there, and had the same
opportunity of knowing that they were not there and of ap-
preciating the danger of their not being there, then I charge you
that upon that question he cannot recover.

"Now, gentlemen of the jury, I have told you that
where the plaintiff's act of negligence is the proximate cause

of the accident, that is, if he would not have been injured but for his negligence, if he is at a place forbidden by the rules of the company, knowing the rules, or ought to have known the rules, then he would be guilty of contributory negligence which would be the proximate cause of his injury. Now, then, I want to call your attention to the figure that the carelessness of his fellow servant may cut in this case. If the plaintiff was injured solely through the negligence or carelessness of a fellow servant without the negligence of the company, then he could not recover. His action must be against the fellow servant who caused the injury, and you are instructed that the wheelman, Vaughan, the boss driver, Veatch, the machine man, Cogan, in the employ of the defendant at the time the plaintiff was injured, are all his fellow servants, and so are all the laborers employed in and around that mine whose official position is below that of the pit boss. Now, I say, that these men are all the fellow servants of the plaintiff, and for any negligence or lack of care or attention upon their part in the discharge of their duties the defendant is not responsible. That is the law with regard to fellow servants. If, then, the proof shall show you that this accident occurred because of the negligence of the wheelrunner, or because of the negligence of any other person below that of the pit boss, although the plaintiff himself may not have been guilty of contributory negligence and may have been guilty of no negligence whatever. and acting in the full, honest, and fair discharge of his duty, obeying the rules of the company and doing everything else that would make him a careful man, yet if the negligence was that of a fellow servant, then he cannot recover in this case. He must sue the fellow servant and not the company. He must sue the man who did it, whose fault it was, and not the men whose fault it was not. But this does not follow, gentlemen of the jury, if you find that there was concurring negligence in the defendant company. If you find that a fellow servant

was negligent and that the company did not exercise due and proper care, and that but for the negligence of the company it would not have occurred, then the company would be responsible in such case. For instance, if you find that the accident was caused by the wheelman, by his negligence primarily, that some accident of his caused some break about the machinery, and that the machinery was not made sufficiently strong, or that there were defects in it known to the employer, or which could have been known to him by the exercise of reasonable care which contributed to the injury, then he would be guilty, because this would be concurring negligence of the defendant and the fellow servant. Now it is claimed, or whether claimed or not, there is some proof before you here with regard to the wreck. Whether the wreck down here caused the bolts or other parts of the machinery up here to break, or whether the breaking of the parts of the machinery up here caused the wreck down here, is a question that will be argued before you, I presume. It is a question, at any rate, about which there is proof in this case. The court instructs you that if the accident was caused by the wrecking of the cars, if they run together from some cause not known, but not because of the weakness of the machinery above which brought to bear upon the machinery above a large and unusual pressure, causing it to break—one that could not in the running of the mine ordinarily have been anticipated by the company —then the company would not be guilty of negligence, because the cause of the injury was not attributable to the carelessness and negligence alleged in the complaint. There is no allegation in the complaint that the plaintiff was injured because of the wrecking of the cars. But if you find that in the construction of their machinery and in their duty to keep it in repair that the company had the right to expect, the reasonable right to expect, that such an occurrence would happen in the ordinary course of events, that they had the right to suppose

that that would occurr, then the court instructs you that they should provide against all things which they have the right to reasonably expect that may occur in their mine. They are not to go to unusual precautions, but they are to anticipate that which usually happens, which ordinarily happens in the mine, that ordinarily may happen or may reasonably happen, and they must provide against that. They must make their machinery sufficiently strong to provide against such things, but they are not required to go further. That if an unusual wreck, one in excess of what they had the right to anticipate, occurred down there and broke down the machinery, then they would not be liable; but if it were such an accident as they could reasonably anticipate when they were constructing it, then the court instructs you that it ought to have been sufficiently strong to provide against such an accident. It is the duty of the employer to keep his machinery in a reasonably safe condition, to keep them so after they have been constructed and to this end the law requires that it shall make inspections for the purpose of discovering whether or not there be defects. It is his duty, either by himself or some other person, that he may select, to make sufficient inspections from time to time to discover imperfections of the machinery, if any exist. If he has done that, if he has delegated to his pit boss or any of the others in authority to inspect, and they passed around it as often as a prudent man would inspect such machinery and found nothing wrong, then the court instructs you that he will have done his duty; but if he fails in this particular to make proper inspection, just such an inspection as I have said that ordinarily prudent men would make in order to ascertain and see whether or not the machinery was safe, then he would be guilty of negligence, provided there was an imperfection. You have got to find that there was an imperfection first which could have been reasonably discovered by the inspector. If there was, and such defect produced the injury—because if

it did not produce the injury it would make no difference whether it was found or not, because it has done no harm—but if such imperfection existed, and was the cause of the accident, and it could have been discovered by proper inspection, then the master is liable.

"In order for the plaintiff to recover in this case he must show by a fair preponderance of the evidence that the accident was caused by one or more of the specific defects alleged in his complaint, and the jury are not authorized to find that the accident happened of such alleged defects simply because the accident occurred and plaintiff was injured. The burden of proof is upon the plaintiff to establish by a preponderance of the evidence that it was occasioned as alleged in his complaint. By a preponderance of the evidence, we mean not that it shall be established beyond a reasonable doubt, but that he must have more evidence, weightier evidence then the defendant. It must preponderate upon his side. Whether the proof preponderate upon one side or the other does not necessarily depend upon the number of witnesses who may testify upon the one side or the other, because some men may tell the truth and some may not. Some men may be better informed, others may not. If one man tell the truth and ten liars contradict him by falsehood, the testimony of the one truthful man outweighs the testimony of the ten lying men. If two men of equal intelligence testify with regard to the same facts, and one has a better opportunity of knowing what occurred than the other, and that would be all the difference between them, then the testimony of the man who would have the better opportunity would outweigh the testimony of the man who did not, and so on all through. You determine where the weight of the evidence is, and, when you have found that, you must find that it is heavier upon the side of the plaintiff than upon the side of the defendant before the plaintiff can recover.

"There has been some conflict of evidence here. It is a rule of law that where there is a conflict of evidence, it is your first duty to reconcile the evidence so that all may stand if possible. If it be irreconcilable, then you are to determine which witness you will believe, and in arriving at your conclusions in cases of this kind you take into consideration the appearance of the witness upon the stand, his apparent frankness or want of frankness, his opportunity of knowing the things about which he has testified, whether or not he is corroborated or contradicted. You take into consideration whether or not the witness has been impeached in the ways laid down by the law; and one of the ways is that where a witness has made contradictory statements to those made upon the stand, that is allowed to go before you for the very purpose as you were told here yesterday, and the only purpose, of considering the credibility of the witness. The fact which it is claimed he stated different from what he stated upon the stand is not to be taken for the purpose of proving the fact, but is only for the purpose of affecting his credibility as a witness. You also take into consideration the motive of the witness, if any be shown, to swerve from the truth.

"The risks which an employe assumes when he enters upon the discharge of his duty are of two classes: First, he assumes all of the ordinary risks pertaining to his business, and that if the defendant should have been negligent in supplying imperfect machinery, and the employe became aware of the defect, or by ordinary care might have known it, then it is his duty either to inform his master, or quit work, and if he continues in the employment he assumes the risks that may result therefrom. Ordinary care on the part of an employe with regard to the condition of the machinery means such care as a person situated as he was situated would ordinarily use. He has the right to assume in the first instance that his employer has given to him safe machinery with which to work. He

has the right to assume that because that is the duty which I have told you devolves upon the employer by the very nature of the contract. He has the right to assume that and therefore to go to work assuming that the thing is in repair. But when he gets down there and goes to work he looks over the situation, and if there be defects that are before him, defects which he can see just as well as the master, not such as the master can see through the eyes of his inspector, but such as he can see by the use of ordinary care, if he see them, or by ordinary care could have seen these defects, then as I have told you he will be held to have known them, and he takes all risks of the work with the machinery under that condition because he knows what it was and he was not bound to work or continue in the employment, and if he did so, he assumes the risk.

You are further instructed that if you find for the plaintiff, in assessing his damages, you have a right to take into consideration the personal injury inflicted upon the plaintiff, the pain and suffering undergone by him in consequence of his injury, if any are proven and also any permanent injury sustained by him, if you shall believe from the evidence that the plaintiff has sustained such permanent injury from the wrongful acts of the defendant complained of. And also any disability resulting to the plaintiff from the injury which renders him less capable of attending to his business and the time which he actually lost by reason of the injury. You also take into consideration of mental suffering, and you give to him such amount as you think is just and proper."

The judgment of the trial court is affirmed.

TOWNSEND and LAWRENCE, JJ., concur.