MILBY & DOW COAL & MINING CO. VS BALLA.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 860).

1. *Master and Servant—Risk—Servant's Injury.*

A mule driver in a mine who was injured through a mule becoming frightened at a curtain in a passageway, the same mule having been frightened in the same manner a few hours before while in charge of the same driver, cannot recover from his employer, even though the pit boss induced the driver to return to his work after the first occurrence telling him the mule was not vicious, but merely frightened.

2. *Same.*

It is the duty of the master to provide a reasonably safe place and appliances for work and it is the duty of the servant to likewise be careful in the use of such appliances. If, knowing any defects of which the master has no knowledge, he continues work and is injured, he cannot recover.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice T. C. Humphrey, October 30, 1905.

Action by John Balla against the Milby & Dow Coal & Mining Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions to dismiss.

*F. H. Kellogg* and *Campbell & Wright,* for appellant.

*Harley & Lewis,* for appellee.

LAWRENCE, J.   December 6, 1901, appellant was operating a coal mine, and appellee was there employed as a coal digger, and occasionally drove the mine mules in hauling out loaded cars, and returning the empties. On this day, by request of the pit boss, appellee took the place of a driver, and was furnished a mule that had been used in the mine a few weeks, and was not well broken to the work, and the proof shows was

hard to handle, and scary. This quality was unknown to appellee when he started to drive in the morning. He hauled out a number of loaded cars and returned with empties without serious difficulty, until about the noon hour, when, passing out with a loaded car, the mule became frightened at a curtain which hung in the entry from the roof to the floor, and was placed there to change the course of the air current in the mine. It plunged, kicked, turned, and finally broke the "tail chain," which fastened it to the car, and ran out of the mine into the open. The appellee followed, with his dinner pail, and informed the pit boss that he would not longer drive the mule, stating that it was scary, dangerous, and would again run away. The pit boss replied that the mule was only frightened, that it was gentle and could again be worked, and asked the appellee to take it back to the mine, hitch it up, and finish the day's work. Appellee did so, under protest, and relying upon the opinion of the pit boss as to the safety of the undertaking. He continued the work, hauling out a number of loaded cars, when he again came near the curtain at which the animal frightened in the forenoon. Appellee was in his proper place for driving, on the right side of the load, near the front wheel, with a "spragger"— a stick to check the movement of the car—when the mule suddenly turned, plunged, and kicked in its efforts to break loose from the car. In its struggles the "tail chain" caught appellee, violently threw him to the ground, and the loaded car was pulled over and upon him, whereby both his legs were broken and other wounds and bruises were received upon his body. Five months thereafter his right leg was amputated below the knee because of this injury. He was confined to his bed six months, and was in the hospital for nine months. Afterward he got work in the blacksmith shop, repairing pit cars, and earned $2.23½ per - day. Appellant denied specifically the statements of appellee, and set up the affirmative defense of contributory negligence, and that at the time of the alleged

injury appellee had full knowledge of the character of the mule, and therefore he assumed all risk incident to the work in which he was then engaged. There is not any material dispute as to the facts as above alleged. The age of appellee was shown to be 24 years, his business a coal digger, at which he earned from $3.25 to $3.50 per day, and his life expectancy was 39 and 49-100 years. At the close of the evidence, appellant requested the court to instruct the jury to return a verdict for the appellant. This the court refused. The appellant followed with a number of other requests of the court to instruct, which were also refused. The court, upon its motion, gave some instructions to the jury. The jury returned a verdict in favor of the appellee for $12,000. A motion for new trial was filed by appellant, which was overruled, and judgment rendered on the verdict.

Appellant has appealed, and assigns over 30 grounds of error. We deem it only necessary to consider the one refused by the court to instruct the jury to return a verdict for the defendant. The pivotal question presented by the record is whether or not the appellee, when he returned to work with the mule after its plunging, kicking, turning and breaking from the loaded car, in the forenoon, and running out of the mine into the open, assumed the risk of using it afterward. It is a clear and well-settled legal proposition that a servant cannot recover of the master for personal injury suffered while engaged in the master's employ, where the injury may be attributed to the negligence of the servant, or where the facts and circumstances clearly show that the injury was the result of the assumption of the risk of danger apparent at the time to the servant, or which, from the nature of the employment, he should have known by the exercise of reasonable care. The distinction between contributory negligence and assumed risk is not made clear by the books. It is said that they may, and sometimes do, rise out of the same facts, as when the danger is not only known or obvious, but injury therefrom so imminent that no

person of ordinary prudence would assume the risk. Chicago G. W. R. R. Co. vs Crotty, 141 Fed. 913, 73 C. C. A. 147, 4 L. R. A. (N. S.) 832; St. Louis Cordage Co. vs Miller, 126 Fed. 498, 61 C. C. A. 477, 63 L. R. A. 551; Bradburn vs Wabash R. R. Co., 134 Mich. 575, 96 N. W. 929. He knew better than any other person could know, after his experience in the forenoon, that the animal was unsafe—in his own language, "dangerous"—and yet he voluntarily again hitched the mule to the loaded car, and undertook to drive her near the curtain that had caused her, within three hours before, to plung, kick, turn; break the "tail chain" and harness, and flee from the mine, while he was driving and trying to manage her. This last effort resulted unfortunately for him. It cannot be said from the evidence that he was guilty of negligence on his part in handling the animal. He alone could tell the facts. He has described how he was driving, and it appears he was, at the time of the injury, in his proper place in the performance of the work, and was carefully handling the car and driving. True, he came to the same "scare-crow" that caused the previous runaway, but there is nothing to show that his work and duty did not require him to be there. In short, he took the risk—the chances—of another similar occurrence, and an ordinarily sensible man might well expect it. It did occur, with the difference that he was unable to escape being caught in the "tail chain" and by the overturned loaded coal car. There could not be a clearer case of assumed risk.

It is likewise clear that the appellee does not come within any of the exceptions to assumed risk, one of which is where the servant, knowing of the existence of the defect, complains of it to the master, who promises to right it. In reliance of such promises, the servant may justify the continued use of the defective article, thing, machinery, or animal, until a reasonable time shall have passed for such repair, without being charged with assumption of the risk. Purcel M. & E. Co. vs Kirkland

2 Ind. Ter. 169, 47 S. W. 311; Railroad Co. vs Woodworth, 1
Ind. Ter. 20, 35 S. W. 238.   The other exception is, where the
servant receives an assurance from the master that a particular
tool or appliance is safe, he may rely upon such assurance, if it
appear that the master had the greater knowledge or means of
knowledge concerning them, and thus continue in the master's
employment, unless he, the servant, knew, or by the exercise
of ordinary care for his own safety must necessarily have known,
of the defects and of the danger incident to the use of such tool
or appliance.   Under such conditions it will not excuse the
servant, and relieve him from the liability of assumed risk.   1
Labatt on Master & Servant, 1272.   We are of the opinion that
the appellee has failed to bring himself within either of these
exceptions.   He was 24 years of age when injured, and was an
experienced coal miner and mule driver.

In the case of St. Louis Cordage Co. vs Miller, 126 Fed.
499, 61 C. C. A. 477, 63 L. R. A. 551, a young woman of 20 was
held to be of mature years and subject to the rule of assumed
risk.   Likewise, in the same circuit, it was held by the Circuit
Court of Appeals in Haas vs Balch, 56 Fed. 984, 6 C. C. A. 201,
that, when the employe is of mature years, and ordinary in-
telligence, and has equal knowledge with the master of the
risk that may reasonably be apprehended, the employe is bound
to exercise his own judgment as to whether he will subject
himself to the known dangers of the situation.   In other words,
the law will not allow a servant to gamble upon the chances of
getting hurt, under such circumstances, and, in case he loses,
compel recovery from his master.   Showalter vs Fairbanks,
Morse & Co., 88 Wis. 376, 60 N. W. 257; 1 Labatt on M. & S.
1266; Toomey vs Eureka I. & P. Works, 89 Mich. 249, 50 N. W.
850; Linch vs Sagamore Mfg. Co., 143 Mass. 206, 9 N. E. 728;
Bradshaw's Adm'r vs L. N. R. Co., 21 S. W. 346, 14 Ky. Law
Rep. 688; Anderson vs Akeley Lumber Co., 47 Minn. 128,
49 N. W. 664; Ft. Worth Iron Works vs Stokes, 33 Tex. Civ

App. 218, 76 S. W. 231.   It will be found from an examination of the foregoing authorities, and by reflection on general principles, that the relation of master and servant does not make the master the insurer of the servant's safety.   Their duties are correlative.   The master must use the care exercised by an ordinarily prudent person under the same circumstances in providing the servant with a place reasonably safe in which to work, and appliances and means reasonably safe with which to work, and like care in maintaining such place and appliances. The servant must exercise like care in using such place and such appliances, and, if from his superior opportunities the servant shall become informed of any defects therein, not known by the master, and he shall see fit to continue their use, and shall be injured, he cannot recover from the master the loss suffered because of such injuries.   From the time such knowledge of defects comes to him, he is carrying his own risk of injury, unless he shall be relieved therefrom by the promise to repair the defects.   The law gives no premiums for negligence.   Choctaw, O. & G. R. Co. vs McDade, 091 U. S. 68, 4 Sup. Ct. 24, 48 L. Ed. 96.   It is clear to us that the court erred in not instructing the jury to return a verdict for defendant, as requested by the defendant at the close of the evidence.

Another trial cannot result differently, for this opinion is based upon the testimony of the appellee, and necessarily determines that appellee has not a cause of action for the injury set forth in his complaint, and, as any amendment must conform to his testimony, it follows that the judgment of the court below is reversed, and remanded, with directions to dismiss the action.

GILL, C. J. and TOWNSEND, J., concur.   CLAYTON, J., being disqualified, did not participate.