## OSAGE COAL & MINING CO. v. SPERRA.

No. 3170. Opinion Filed August 25, 1914.

(142 Pac. 1040.)

1. **MASTER AND SERVANT—Injury to Servant—"Assumption of Risk."** "Assumption of risk" is a term of contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that the ordinary dangers of injury, obvious and known to be incident to the discharge of his duty, shall be at his risk.

2. **SAME—Questions for Jury.** Under section 6, art. 23 (section 355, Williams' Ann. Ed.), Constitution of Oklahoma, the defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury.

3. **SAME—Defense.** "Assumption of risk" is available as a defense to an action for damages for personal injuries, notwithstanding such action is predicated upon the negligence of defendant in failing to furnish plaintiff a reasonably safe place in which to work.

4.　　**SAME**—Instructions. It is error to instruct the jury so as to only authorize a finding for defendant upon the ground of assumption of risk, provided they ''find that the place to work, and the tools and appliances with which to work, were reasonably safe.''

(Syllabus by Thacker, C.)

*Error from Superior Court, Pottawatomie County; George C. Abernathy, Judge.*

Action by Tona Sperra against the Osage Coal & Mining Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Gordon & McInnis,* for plaintiff in error.

*H. H. Smith* and *W. T. Williams,* for defendant in error.

Opinion by THACKER, C.　Plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

Plaintiff recovered a judgment for $2,000 for injuries suffered by him in the services of the defendant as teamster in the latter's coal mine near Krebs, Okla., upon the grounds of negligence and liability in respect to obvious condition of the mine at the time and long before he undertook the work in question. The plaintiff had worked in this mine four or five years, and as such teamster four or five months prior to the time of his injuries, and was well acquainted with the conditions upon which he predicates his allegations of negligence and liability against defendant.

There was in this mine a passageway about thirteen feet wide, about five and one-half feet from the bottom to top, and running east and west, along the south side of which was a track upon which loaded cars were taken to the east to be emptied, and along the north side of which was a parallel track upon which empty cars were returned to the west to be loaded. There was a space of about three feet between the track along which loaded cars were taken and the track along which the empty cars were returned, but in this space were upright timbers from about six to eighteen and occasionally more inches apart

which, as center props, supported cross-timbers having ends resting on similar upright timbers on either side of the passageway and sustaining the enormous weight of a loosened roof of earth and stone above such passageway.

The space between these center props and the passing cars was not sufficient to be used as a manway, and the practice, as well as the physical conditions in this mine, required the teamster to ride on the front end of the car next to the team, which consisted of two mules hitched one in front of the other. Such practice and conditions further required that when a point on the track for loaded cars had been reached, from which the force of gravity unaided would cause these cars to continue on their course to the east, the teamster, from his said seat on the car next to the tandem team, would reach down and, pulling a pin or link, unhitch the team from the cars and turn and follow them from the track through an open space four or five feet, or, according to a plat in evidence, seven feet ten inches wide, between said center props, to the track for empty cars on the north side of the passageway, where the team was hitched to such empty cars and driven back west. Plaintiff had made about forty or a few more such trips per day during the time he had worked as such teamster, and on several former occasions had failed to unhitch the team from the loaded cars in time to prevent a wreck of the track by the taking of the cars off to the north with the team in its passage through said open space onto the track for empty cars.

About October 20, 1908, plaintiff, with what is called his "trip," consisting of about nine loaded cars drawn by the two mules, failed in his effort to unhitch the team until imminence of danger of being crushed between the cars, and one of the mules, which had passed the open space through which the lead mule had properly turned, and had entered or attempted to enter the space next east thereof, caused plaintiff to jump forward onto the track ahead of the cars, in which act he was in some unknown way tripped and fell and was run over and injured by the front car. It appears that the proximity of the car on which plaintiff

was seated to the mule was a cause, if not the sole cause, of his failure to disconnect the team from the cars, which indicates that the cars were proceeding as a result of the force of gravity alone; and it does not seem clear that he had, in due time to prevent interference by such a situation, attempted to effect a severance of the team from the cars. He sued for and recovered damages upon the grounds that defendant was guilty of negligence proximately causing his injuries in the following particulars relating to defendant's duty to furnish him a reasonably safe place in which to work, to wit: (1) Negligence in failure to provide a manway along which plaintiff might have walked by the side of his team and cars, and from which he might have unhitched the team without danger of such injury, which could not be done because of said center props; and (2) negligence in failing to maintain a cross strip of timber between the center prop on the east side of the open space through which the team was properly driven to the track for empty cars and the center prop next east thereof, as tending to cause both mules to turn into said space instead of permitting one to go into this space and the other to enter the space next east thereof and thus straddle a post.

There was no charge of negligence in respect to the apparatus for unhitching, the arrangement for safety of position of plaintiff on the car, the harness, or the team, which were furnished by the defendant; and, as hereinbefore stated in effect, all the conditions of which he complains were obvious and well known to him when he commenced work and at all times thereafter.

The court instructed the jury, over defendant's objection, to the effect that the plaintiff did not assume any risk of his employment unless "the place to work, and the tools and appliances with which to work, were reasonably safe"; and the pertinent portions of the fourth, sixth, and sixteenth instructions given, as to assumption of risk, read as follows:

"You are instructed that a master assumes the duty to his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place in which to work and with reasonably safe machinery, tools, and appliances to work with,

and you are further instructed that, when the master has properly discharged that duty, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work;   *   *   * and if you find, by a fair preponderance of the evidence, that the defendant, or any of its servants or employees, failed to furnish the plaintiff a reasonably safe place to work, it would be your duty to find for the plaintiff and against the defendant.   In determining what is a reasonably —— place, you are instructed that when the master provided suitable implements and conditions surrounding the work, so that the servant can with reasonable safety to himself perform the duty required of him, the master would not be liable.   In this case, if you find, by a fair preponderance of the evidence, that the defendant has failed to discharge its duty in this regard to the plaintiff, and plaintiff has been injured thereby, it will be your duty to find for the plaintiff and against the defendant."

"The defendant interposes, as a defense, assumption of risk; that is to say, that the plaintiff's injuries were caused by ordinary incidents arising out of the risks of his employment.   On this issue I instruct you that it is the law of this state that the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, but he does not assume, as ordinary risks of his employment, the negligence of the master or the defendant in this case to furnish a reasonably safe place to work and reasonably safe implements to work with; and, if you find from the evidence in this case that the injuries to the plaintiff, if any, were caused by the negligence of the defendant in these respects, the plaintiff would not assume the risk of this employment, but on the other hand, if you find from the evidence that plaintiff's injuries, if any, were not caused by the negligence of the defendant, but resulted from the ordinary risks of his employment, then I instruct you that the plaintiff could not recover."

"If you believe from the evidence in this case that the plaintiff was familiar with the driveway along which he worked, and with the construction of the same, and with the cars, chain, mules, and other instrumentalities employed by him in the performance of his work, and, being familiar with all these things, went into and continued in the defendant's employ, then he assumed the ordinary risks of his employment, and cannot recover in this case, *provided that you find that the place to work, and the tools and appliances with which to work, were reasonably safe.*"   (Italics ours.)

It is in effect contended that the term "ordinary risks," as used in the last-quoted instruction, is not broad enough to include any and all usual, customary, and common risks incident to the employment under the conditions actually existing in the present case, but that this term refers only to such risks as are usual, customary, and common incidents of an employment in which the master has furnished the servant a reasonably safe place in which to work and reasonably safe tools and appliances with which to work, and is free from actionable negligence; *i. e.,* it is contended that the risks resulting from the master's negligence are *extraordinary* and never "ordinary risks." Upon this assumption, it is further contended that the italicized 21 words, with which said instruction ends (which words were added over objection to this instruction as requested by defendant), merely develop and make clearer the idea embodied by defendant itself in the preceding portion of this instruction; *i. e.,* that the instruction, with or without these added words, merely means that in respect to those "ordinary risks" which are incident to an employment, after and notwithstanding the master has fully discharged his duty so as to be free from negligence and liability, the servant assumes them as a matter both of law and of logic as a necessary result of the nonliability of the master.

This species of assumption of risk, however, is not a distinct nor an affirmative defense, is necessarily involved in the inquiry as to whether the master is guilty of actionable negligence (*i. e.,* as to whether the master is *prima facie* liable), and is different from the assumption of risk to which section 6, art. 23 (355, Williams' Ann. Ed.), Constitution of Oklahoma, refers; and we are unable to agree that the instruction under consideration does not refer to the distinct and affirmative defense of assumption of risk which the Constitution required to be left to the jury. We think it clear that the term "ordinary risk," as used in this instruction, was intended and was susceptible of being most easily, if it must not necessarily be, understood to mean the "ordinary" or usual and obvious and known risks of the employment as it actually was in the present case, and that, too, upon

the assumption that there was evidence reasonably tending to show the defendant guilty of negligence in failure to furnish plaintiff a reasonably safe place in which to work, or reasonably safe tools and appliances with which to work, so as to give occasion to such affirmative defense and entitle defendant to have the distinct and affirmative defense of assumption of risk presented to the jury for determination.

But, if there was otherwise any doubt as to this, such doubt would seem to be dispelled by reference to the two preceding quotations from the instructions of the court; and, upon the whole, we think it clear that the court erroneously instructed the jury so as to preclude a finding that the plaintiff assumed any risk, as against actionable negligence on the part of defendant, unless the place to work, and the tools and appliances with which to work, were found to have been reasonably safe. 3 Labatt on Master & Servant (2d Ed.) pp. 3176, 3186, 3187; 4 Thompson on Negligence (2d Ed.) sec. 4610; Patterson on Ry. Accident Law, p. 343, sec. 316; *Alcorn v. C. & A. Ry. Co.,* 108 Mo. 81, 18 S. W. 188; *Unfried v. B. & O. Ry. Co.,* 34 W. Va. 260, 12 S. E. 517; *A., T. & S. F. Ry. Co. v. Wagner,* 33 Kan. 666, 7 Pac. 208; *Minty v. Union Pacific R. Co.,* 2 Idaho (Hasb.) 471, 21 Pac. 660, 4 L. R. A. 409.

The section of the Constitution cited, *supra,* reads:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

In *St. Louis & S. F. R. Co. v. Long,* 41 Okla. 117, 137 Pac. 1156, it is said:

"Neither the defense of contributory negligence nor the defense of assumption of risk can arise, of course, unless the defendant has been guilty of negligence which, but for one or both of these defenses, would render it liable for damages to the plaintiff. Until then there is nothing against which to make defense; but, if there be evidence from which the jury may find the defendant guilty of such negligence, these defenses, if they exist in fact, are available to the defendant."

In the same case it is also held:

" 'Assumption of risk' is a term of the contract of employ-
ment, express or implied from the circumstances of the employ-
ment, by which the servant agrees that dangers of injury ob-
viously incident to the discharge of the servant's duty shall be
at the servant's risk."

The defendant was not absolutely and unqualifiedly bound
to furnish, and absolutely and unqualifiedly liable for failure to
furnish, plaintiff a reasonably safe place in which to work, and
reasonably safe tools and appliances with which to work; but
the defendant's duty to do so was subject to the qualification that
the plaintiff could assume the usual, ordinary, and known risks
arising from its failure to do so, and a jury, if correctly instructed,
would be expected to find that he did assume such risks as were
usual, ordinary, and known to be incident to the discharge of his
duties in the employment in which he was injured, although these
risks may have resulted from what would otherwise have been
actionable negligence on the part of defendant.

That it was error for the trial court to instruct the jury in
effect that the plaintiff could not assume the risk of the want of a
reasonably safe place in which to work, and of reasonably safe
tools and appliances with which to work, especially so in view
of his failure to instruct that assumption of risk was a question
of fact which must be left to the jury, seems too clear to require
either argument or further citation of authorities; but that a
servant may assume such risks, and that the presumed knowledge
or ignorance of the servant is the essential basis by which he is
charged with the acceptance of one class of risks incident to his
employment, and the nonacceptance of another class, will appear
from an examination of the following authorities: 3 Labatt on
Master and Servant (2d Ed.) secs. 897 and 1181; 4 Thompson
on Negligence (2d Ed.) 625, 627, and 628; *Dewey Portland
Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659; *Coalgate Co.
v. Hurst,* 25 Okla. 588, 107 Pac. 657; *Sans Bois Coal Co. v.
Janeway,* 22 Okla. 425, 99 Pac. 153; *Neeley v. Southwestern Cot-
ton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145;
*Milby & Dow Coal & Mining Co. v. Balla,* 7 Ind. T. 629, 104 S.
W. 860, 18 L. R. A. (N. S.) 695; *Atoka Coal & Mining Co. v*

*Miller*, 7 Ind. T. 104, 104 S. W. 555; *Choctaw, O. & G. R. Co. v. O'Nesky*, 6 Ind. T. 180, 90 S. W. 300; *Schellin v. North Alaska Salmon Co.* (Cal.) 138 Pac. 723; *Missouri, K. & T. Ry. Co. v. Wilhoit*, 160 Fed. 440, 87 C. C. A. 401; *Bradburn v. Wabash R. Co.*, 134 Mich. 575, 96 N. W. 929; *Bengston v. Chicago, St. P., M. & O. R. Co.*, 47 Minn. 486, 50 N. W. 531; *Forbes v. Boone Val. Coal & Ry. Co.*, 113 Iowa, 94, 84 N. W. 970; *Atchison, T. & S. F. Ry. Co. v. Schroeder*, 47 Kan. 315, 27 Pac. 965; *Roth v. Northern Pac. Lumbering Co.*, 18 Ore. 205, 22 Pac. 842; *Wood v. Heiges*, 83 Md. 257, 34 Atl. 872; *Brossman v. Lehigh Val. R. Co.*, 113 Pa. 490, 6 Atl. 226, 57 Am. Rep. 479; *Little Rock & Ft. S. R. Co. v. Duffey*, 35 Ark. 602; *Sanderson v. Panther Lbr. Co.*, 50 W. Va. 42, 40 S. E. 368, 55 L. R. A. 908, 88 Am. St. Rep. 841.

One of the instructions as to assumption of risk, subject to the foregoing criticism, makes defendant's right to prevail upon this defense depend upon the following proviso in concluding the same:

"Provided you find that the place to work, and the tools and appliances with which to work, were reasonably safe."

The duty of the master to furnish a safe place in which to work is a common-law duty, and is not imposed by any statute in this state in respect to the particular defects in place of which plaintiff complains. There are other serious questions in this case; but, upon the whole, we deem it unnecessary to consider them, as they will probably not arise upon another trial.

For the reasons hereinbefore stated, we are of the opinion that this case should be reversed and remanded for another trial.

By the Court: It is so ordered.